JODY WAGNER,

        Petitioner,

                              Case No. 16-cv-106-pp

   v.

JON NOBLE,

        Respondent.

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 22), DENYING AS MOOT PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL (DKT. NO. 21), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE

On January 28, 2016, the petitioner, who is incarcerated at Kettle Moraine Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2011 conviction in Waukesha County Circuit Court for aggravated battery and first-degree reckless injury. Dkt. No. 1. On October 19, 2020, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases, ordered the respondent to answer or otherwise respond and set a briefing schedule. Dkt. No. 18. Three weeks later, the petitioner filed a motion for appointment of counsel. Dkt. No. 21. On December 18, 2020, the respondent filed a motion to dismiss the petition for procedural default, dkt. no. 22, and a supporting brief, dkt. no. 23. On February 22, 2021, the petitioner filed a brief in opposition to the motion to dismiss. Dkt. No. 26. The respondent replied two months later. Dkt. No. 29.

1

This order grants the respondent's motion to dismiss the petition, denies the petitioner's motion for appointment of counsel as moot and dismisses the case with prejudice.

## I.    Background

    A.    <u>State Case</u>

        1.    *Trial in Waukesha County Circuit Court*

On May 28, 2010, the State charged the petitioner with aggravated battery and first-degree reckless injury. <u>State v. Wagner</u>, Case No. 2010CF000554 (Waukesha County Circuit Court) (available at https://wcca.wicourts.gov). The Wisconsin Court of Appeals recounted the relevant facts in its decision affirming the petitioner's conviction:

> Melissa Holcomb, [the petitioner's] former girlfriend, testified that [the petitioner] found her kissing another man, pulled her to the floor and repeatedly punched and kicked her resulting in a broken arm, a broken finger and a perforated intestine. Those allegations constitute the basis for the aggravated battery charge. [The petitioner] then picked her up and carried her to bed where he left her without medical care for two days until Holcomb's mother interceded and [the petitioner] took Holcomb to the hospital. By that time, Holcomb was within hours of death due to sepsis. Leaving Holcomb in a condition where she was unable to care for herself and where lack of care could result in her death from sepsis constitutes the basis for the reckless injury charge.

Dkt. No. 23-1 at 2.

On November 18, 2010, a Waukesha County jury found the petitioner guilty of both charges. Dkt. No. 1 at 2; <u>see also</u> <u>Wagner</u>, Case No. 2010CF000554 (available at https://wcca.wicourts.gov). Two months later, the court sentenced the petitioner to three years of initial confinement followed by three years of extended supervision on Count One, and fourteen years of initial

confinement followed by ten years of extended supervision on Count Two, consecutive to the sentence imposed on Count One. <u>Wagner</u>, Case No. 2010CF000554 (available at https://wcca.wicourts.gov). The court entered judgment the next day. <u>Id.</u>

### 2. *No-merit report and the petitioner's response*

On December 13, 2011, the petitioner filed a notice of appeal. <u>State v. Wagner</u>, Appeal No. 2011AP002878 (available at https://wscca.wicourts.gov). A month later, Attorney Patrick Flanagan filed a no-merit report. <u>Id.</u> Attorney Flanagan's no-merit report found "no arguable basis for [the petitioner] to challenge the sufficiency of the evidence or the sentences imposed for aggravated battery and first-degree reckless injury." Dkt. No. 23-1 at 1. On April 11, 2012, the petitioner filed a response. <u>Wagner</u>, Appeal No. 2011AP002878 (available at https://wscca.wicourts.gov). The petitioner argued that "(1) the State failed to meet its burden of proof on the reckless injury charge because it failed to prove utter disregard for life and because the victim was not credible; (2) the court lacked subject matter jurisdiction; (3) the State failed to complete discovery by serving the defense with a copy of an envelope; and (4) [the petitioner] was denied a fair trial due to several incidents that occurred during the trial." Dkt. No. 23-1 at 1-2.

On July 3, 2012, the Wisconsin Court of Appeals summarily affirmed the petitioner's conviction. <u>Id.</u> at 1, 6. The appellate court concluded that the jury reasonably found the petitioner guilty of reckless injury, the petitioner failed to present a basis to challenge the trial court's subject matter jurisdiction, the

state's failure to turn over an envelope during discovery did not prejudice the petitioner and none of the incidents the petitioner identified denied the petitioner a fair trial or presented a basis to challenge his sentence. Id. at 2-5.

On July 27, 2012, the petitioner filed a motion for reconsideration. Wagner, Appeal No. 2011AP002878 (available at https://wscca.wicourts. gov). Four days later, the court denied the motion. Id. On August 27, 2012, the petitioner filed a petition for review in the Wisconsin Supreme Court. Id. On November 14, 2012, the Court denied review. Id.

### 3. *October 25, 2013 postconviction motion*

On October 25, 2013, the petitioner filed in the circuit court a postconviction motion under Wis. Stat. §974.06. Wagner, Case No. 2010CF000554 (available at https://wcca.wicourts.gov). The petitioner raised ten grounds for relief: (1) ineffective assistance of trial and postconviction counsel for failing to raise issues; (2) ineffective assistance of trial counsel for failing to discuss discovery and legal issues with the petitioner; (3) a Brady violation from the state's failure to turn over an envelope in discovery; (4) a violation of state law and the Sixth Amendment for the state's failure to begin the petitioner's trial in a timely fashion; (5) a violation of the petitioner's Miranda rights; (6) insufficient evidence to support his aggravated battery conviction; (7) outside influences that prejudiced the jury; (8) lack of subject matter jurisdiction; (9) imposition of multiple sentences for a single act; and (10) the petitioner's contention that his conviction was unfair, unjust and invalid. Dkt. No. 1-1 at 9-10.

4

On February 20, 2014, the court denied the motion. Id. at 8-17. The court recalled that the Court of Appeals had considered and rejected five of the petitioner's claims—that insufficient evidence supported the aggravated battery conviction, that the circuit court lacked subject matter jurisdiction, that the state's failure to turn over an envelope constituted a Brady violation, that outside influences prejudiced the jury and that the petitioner received multiple sentences for a single act—when it analyzed his response to Attorney Flanagan's no-merit report. Id. at 11-12. The circuit court stated that claims or issues "decided in the no merit process may not again be raised in a section 974.06 motion, unless a basis for doing so is set forth." Id. (citing State v. Tillman, 281 Wis. 2d 157, ¶27 (Ct. App. 2005)). It emphasized that the Court of Appeals considered those issues again in the petitioner's motion for reconsideration. Id. at 12. The court found the petitioner's arguments of these issues in his §974.06 motion "conclusionary" and lacking "a basis for [the] court to find that new circumstances [were] raised convincing the court to not apply the bar." Id. The court concluded that the petitioner's other claims were undeveloped and meritless. Id. at 12-17.

4.      *July 8, 2015 Court of Appeals decision*

On July 8, 2015, the Court of Appeals summarily affirmed the circuit court's denial of the petitioner's postconviction motion. Dkt. No. 23-2. The appellate court concluded that Wis. Stat. §974.06 and State v. Escalona-Naranjo, 185 Wis. 2d 168 (1994) barred the petitioner's claims. Id. at 3. The court explained that Wis. Stat. §974.06 provides that

5

> [a]ll grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

Id. at 3 n.2.

Observing that the petitioner's postconviction motion raised "several of the same claims that were rejected in the no-merit appeal," the court explained that those arguments could not be relitigated. Id. at 4 (citing State v. Witkowski, 163 Wis. 2d 985, 990 (Ct. App. 1991)). As to new claims, the court found that the petitioner did not show a sufficient reason for failing to raise them on direct appeal. Id. As to the petitioner's argument that postconviction counsel's ineffectiveness constituted a sufficient reason for failing to raise his claims earlier, the court found it "conclusory and legally insufficient," and concluded that it was not a basis for circumventing the Escalona-Naranjo bar. Id. at 4.

B.    Federal _Habeas_ Petition

On January 28, 2016, the petitioner filed this federal _habeas_ petition. Dkt. No. 1. The petition asserted six grounds for relief: (1) that insufficient evidence supported his reckless injury conviction; (2) that his trial counsel was ineffective for failing to hire a medical expert; (3) that his appellate counsel was ineffective for failing to discover that a "jailhouse informant received consideration for his testimony;" (4) that the trial court lacked subject matter

6

jurisdiction; (5) that outside influences prejudiced the jury; and (6) that his speedy trial and due process rights were violated. Id. at 9-16.

## II.  Respondent's Motion to Dismiss

### A.  Parties' Arguments

The respondent asks the court to dismiss the petition. Dkt. No. 22. He argues that the petitioner has procedurally defaulted on all his claims because the Wisconsin Court of Appeals previously rejected them under an adequate and independent state law ground. Dkt. No. 23 at 11. The respondent asserts that the Court of Appeals "applied the Wis. Stat. § 974.06 and *Escalona-Naranjo* procedural bar to decline to review the merits of [the petitioner's] claims." Id. According to the respondent, during the petitioner's direct, no-merit appeal, the Court of Appeals "not only reviewed and rejected any issues raised by [the petitioner's] appointed-counsel's no-merit report as well as [the petitioner's] response," but also conducted its own independent review of the appellate record. Id. at 13. The respondent contends that "when [the petitioner] again attempted to seek appellate relief . . . following the denial of his Wis. Stat. § 974.6 motion, the Wisconsin Court of Appeals rightly rejected [the petitioner's] claims without addressing them on the merits because the petitioner 'had not demonstrated that his no-merit appeal was procedurally inadequate.'" Id. Stressing that it "was entirely consistent with Wisconsin law," the respondent recounts the Court of Appeals' determination that the petitioner's "conclusory and legally insufficient allegations of postconviction counsel's ineffectiveness" were insufficient to circumvent the Escalona-Naranjo

7

procedural bar. Id. at 14. The respondent argues that the Court of Appeals' refusal to review the merits of the petitioner's claims because they were inadequately pled constitutes a "second independent and adequate state law ground that should foreclose further review in this federal habeas proceeding." Id.

In his brief opposing the respondent's motion to dismiss, the petitioner argues that Escalona-Naranjo does not bar relief because it is inconsistently applied. Dkt. No. 26 at 4. He says that his claim that a witness received consideration for his testimony "was uncovered after the conclusion of the [] no-merit proceedings," and that Attorney Flanagan's "failure to investigate precluded this claim from being timely discovered." Id. at 6.

In his reply brief, the respondent cited Shong v. Meisner, Case No. 16-cv-130 (E.D. Wis. Aug. 23, 2017) at Dkt. No. 23-4 and Perry v. McCaughtry, 308 F.3d 682, 690 (7th Cir. 2002) in support of his argument that the Court of Appeals properly applied the procedural bar to deny the petitioner's collateral appeal without addressing the substance of his claims. Dkt. No. 29 at 3. As to the petitioner's claim that Attorney Flanagan was ineffective in failing to timely investigate the jailhouse informant who testified for the State at the petitioner's trial, the respondent argues (a) that the petitioner was aware of the fact that the witness sought (but was not promised) consideration for his testimony, and (b) that Wisconsin's no-merit process gave the petitioner the opportunity to raise a claim that his trial counsel was ineffective, and he did not do so. Id. at 4-5. The respondent claims that the jailhouse informant's sentencing (at which

8

he allegedly received consideration for his testimony) occurred almost a year before Attorney Flanagan filed his no-merit report. Id. at 5. The respondent also argues that the petitioner has not showed that he would suffer a miscarriage of justice if the court were to find that he has procedurally defaulted on his claims. Id. at 7.

B.    Analysis

1.    *Adequate and Independent State Law Doctrine*

Under the Antiterrorism and Effective Death Penalty Act of 1996, a state prisoner must exhaust available state-court remedies before a district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement gives the state an opportunity to pass upon and correct alleged violations of the federal rights of persons who are incarcerated by the state. Bolton v. Akpore, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). To comply with this requirement, the incarcerated person must "fairly present" the claim in each appropriate state court. Bolton, 730 F.3d at 694-95. "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the claim[s'] merits.'" Weddington, 721

9

F.3d at 456 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

One of the ways a criminal defendant can "procedurally default" on a claim—thus losing his right to federal *habeas* review on that claim—is if the last state court that issued judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." Triplett v. McDermott, 996 F.3d 825, 829 (7th Cir. 2021). "Federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 729 (1991). When considering whether a state court decision rests on a state procedural default, federal courts look to "the last explained state court judgment." Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

A state ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is, whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010). "If the last state court to be

10

presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801. However, "a state court that separately reaches the merits of a substantive claim may also produce an independent procedural ruling that bars federal habeas review." Holmes, 608 F.3d at 967. The question is whether the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. Id. As for adequacy, a state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." Thompkins, 698 F.3d at 986. When considering the adequacy of a state law ground, the court does not consider "whether the review by the state court was proper on the merits." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014).

The Escalona-Naranjo doctrine is an adequate and independent state law ground. Howlett v. Richardson, 729 F. App'x 461, 465 (7th Cir. 2018) (citing Perry v. McCaughtry, 308 F.3d 682, 690 (7th Cir. 2002)). The doctrine states that "an appellant who fails to assert a claim that could have been asserted on direct appeal or a Wis. Stat. § 974.02 motion is barred from subsequently asserting that claim for the first time in a postconviction motion under Wis. Stat. § 974.06." State v. Pope, 389 Wis.2d 390, 419 (Wis. 2019) (citing Escalona-Naranjo, 185 Wis.2d at 173). Generally, if a state court imposes a procedural bar, the petitioner may not challenge the correctness of the bar in a *habeas* petition. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine

11

state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Nevertheless, a federal court may review a state court finding on state procedural law if the finding is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) (citations omitted). The Seventh Circuit has declined to enforce a procedural bar when the record clearly showed that the state court erred in its belief that the petitioner did not raise and argue an issue on direct appeal. Kubat v. Thieret, 867 F.2d 351, 366 n.11 (7th Cir. 1989).

In its decision affirming denial of the petitioner's postconviction motion, the Court of Appeals concluded that the motion raised "several of the same claims that were rejected in the no-merit appeal;" the court explained that the petitioner could not relitigate those arguments. Dkt. No. 23-2 at 4 (citing Witkowski, 163 Wis. 2d at 990). Regarding new claims, the court found that the petitioner had showed no sufficient reason for failing to raise them in responding to Attorney Flanagan's no-merit report. Id. The court considered the petitioner's argument that his postconviction counsel's ineffective assistance constituted a sufficient reason for his previous failure to raise the new claims, and found that argument "conclusory and legally insufficient," and therefore, not a basis to circumvent the Escalona-Naranjo bar. Id. at 4.

The Wisconsin Court of Appeals did not commit clear error when it applied these procedural bars. There is no indication that the appellate court

imposed the procedure bars as a subterfuge to evade consideration of federal issues. Unless the petitioner can show both cause and prejudice, this court cannot review the petitioner's procedurally defaulted claims.

### 2. *Cause and prejudice*

If a federal court determines that a petitioner's claims are procedurally defaulted, it must consider whether to excuse that default. <u>Coleman</u>, 501 U.S. at 750. A court may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice, or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. <u>Id.</u> (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). "It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2065 (2017). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." <u>Weddington</u>, 721 F.3d at 465 (quoting <u>McKee</u>, 598 F.3d at 382)). To show that a miscarriage of justice will occur if the court were to deny *habeas* relief, a petitioner must show that he is actually innocent of the offenses of which he was convicted. <u>Hicks v. Hepp</u>, 871 F.3d 513, 531 (7th Cir. 2017). A petitioner asserting actual innocence as a gateway to a defaulted claim "must establish that, in light of new evidence, 'it is more likely

13

than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

The respondent argues that the petitioner cannot show cause and prejudice for his procedural default. Dkt. No. 23 at 15. He says that "[the petitioner] cannot blame his postconviction/appellate counsel for failing to raise the issues [the petitioner] identified in his Wis. Stat. § 974.06 motion for relief because nothing prevented [the petitioner] [from] raising all of those issues in response to his appointed counsel's no-merit report during his direct appeal." Id. And the respondent contends that appellate counsel was not required to raise "every available non-frivolous defense on appeal." Id. at 16 (citing Knowles v. Mirzayance, 556 U.S. 111, 127 (2009)).

The petitioner argues that Attorney Flanagan's "failure to investigate the scheme to conceal the consideration given by the prosecution" for the jailhouse informant's testimony constitutes cause for the procedural default. Dkt. No. 26 at 6-8. He states that evidence of this trial witness "receiving credit for his testimony was not uncovered until after [the petitioner's] no-merit proceedings had concluded." Id. at 5.

The respondent concedes that ineffective assistance may constitute cause to set aside procedural default when state law "confines claims of trial counsel's ineffectiveness exclusively to collateral review." Dkt. No. 29 at 5. He argues, however, that Wisconsin "expressly allows—indeed, in most cases requires—defendants to raise claims of ineffective assistance of trial counsel as

14

part of a consolidated and counseled *direct* appeal and provides an opportunity to develop an expanded record." Id. (citing Nash v. Hepp, 740 F.3d 1075, 1079 (7th Cir. 2014)).

The petitioner has not shown cause for his procedural defaults. The petitioner asserts that only after the petitioner's no-merit proceedings had concluded did he discover Attorney Flanagan's alleged failure to uncover an alleged "scheme" by the State to give the jailhouse informant consideration for his testimony even though the jury had heard that the informant expected no consideration. Dkt. No. 26 at 5. He says that this late discovery, which he blames on Attorney Flanagan's allegedly deficient investigation, deprived him of the ability to raise the issue of the alleged "scheme" in his response to the no-merit report. Id. at 5-6. The petitioner has cited no authority for his contention that an appellate attorney is ineffective if he does not investigate whether a prosecution witness received consideration in exchange for his testimony. Nor has he provided any proof to support his claim that he learned of the alleged "scheme" only after his no-merit proceedings had concluded.[1]

Even if the petitioner had demonstrated that he did not learn of this alleged "scheme" until after his no-merit proceeding, and even if Attorney

---

[1] The petitioner provides no explanation for how he learned the details of the informant's sentencing. The jailhouse informant was sentenced in March 2011, Attorney Flanagan filed the no-merit brief in January 2012 and the no-merit proceedings concluded in November 2012. The petitioner says only that he learned the details of the informant's sentencing when he launched his own investigation "at the conclusion of Flanagan's lackluster investigation." Dkt. No. 26 at 3.

15

Flanagan was ineffective in failing to uncover it, the petitioner cannot demonstrate that he was prejudiced by the alleged ineffective assistance.

The petitioner attached to his brief in opposition to the motion to dismiss a portion of the transcript of the third day of his trial—November 17, 2010. Dkt. No. 26 at 10. Because the petitioner did not attach the full transcript, the name of the witness is not reflected, but it appears to be the jailhouse informant. The petitioner attached pages 116 and 117 of the transcript, where it appears that the petitioner's counsel was cross-examining the informant about a letter the informant had written to the district attorney. The following exchange occurred:

> Q: And why did you write this letter?
>
> A: I wrote this letter because I felt it was pertinent that the Court be made aware of some of the things that [the petitioner] was saying.
>
> Q: That's not exactly what you said in your letter, is it?
>
> A: I believe that that's—Yeah.
>
> Q: Isn't it true that you wrote in this letter and you wrote in your own words, "I pray you and your office will see fit to make a favorable recommendation in my pending case." Did you write that?
>
> A: Yes, I did.
>
> Q: Well, what does that mean?
>
> A: Well I—Exactly what it says. I, you know, I would hope and pray that if I brought forth some evidence that would help the DA out that they would make a favorable recommendation in my pending matter.
>
> Q: To this judge?
>
> A: I didn't know that it was before this judge at that time, but yeah.

Q: Okay. And then you would get some consideration for your testimony?

A: That's what I thought, yes.

Q: Okay. And so for example you could get a lesser fine, lesser suspension, lesser jail term if that's appropriate?

A: That's not what they told me, but that's what I had anticipated, yes.

Q: So you wrote this letter anticipating that you possibly could get lesser jail time on your pending case?

A: It was a possibility, yes.

Id. at 11-12.

The petitioner also attached page 120 of the transcript, where the following exchange occurred:

Q: And did you think when that was made known to you that you would receive some consideration for your testimony?

A: No. It was already pretty much made clear that I wouldn't receive any consideration for my testimony by that time.

Q: But you knew if you testified today you'd be in front of the same judge some time in the future?

A: Yes.

Id. at 13.

The petitioner also attached three pages from the jailhouse informant's March 11, 2011 sentencing hearing, which took place before the same judge who had presided over the defendant's trial. Id. at 14-17. At page 3 of the transcript, the following exchange occurred:

PROSECUTOR: Thank you, your Honor. The first thing I want to— I want to resolve, or not really resolve but make a record of relates

17

to what I suspect the Court may recall is [the jailhouse informant's] testimony in the matter of State versus [the petitioner].

COURT:     Yes.

PROSECUTOR:     Um, we have the benefit of this Court having heard his testimony so the Court's in a great position to be able to assess if it was valuable to the trial. I think there's—there's some credit that accrues to [the petitioner] from that because there was no offer, as was testified at the trial.

COURT:     Credit that accrues to [the jailhouse informant]?

PROSECUTOR:     To [the jailhouse informant].

COURT:     You said [the petitioner].

PROSECUTOR:     Oh, I'm sorry.

COURT:     That's okay. I've done that twice today. I just want to make it clear I understand what you're saying.

PROSECUTOR:     I'm sorry. There is some credit that accrues to [the jailhouse informant] because the testimony at trial came with—with the knowledge at that point that the State would be doing nothing on . . . .

Id. at 15. Because the petitioner did not attach the next page of the transcript, the court does not know how the prosecutor would have finished that sentence, but he appears to have been telling the court that at the time of the petitioner's trial, the jailhouse informant had been told that he would receive no consideration for his testimony.

The petitioner attached pages 38 and 39 of the informant's sentencing transcript, reflecting the following exchange:

COURT:     . . . I have made a determination regarding [the jailhouse informant's] involvement in this case, and it is as follows:

I listened to [the informant's] testimony. There was a case involving statements by [the petitioner] that were corroborated by a

18

witness that was brought and subpoenaed to testify by [the petitioner], and those statements by the witness were in support of [the petitioner]. [The jailhouse informant's] testimony provided insight into what was characterized, in my view appropriately by the State, as being an effort to get stories straight while the two individuals were incarcerated in the Waukesha County Jail.

I believe that the jury did find that information, at least to my ear because I sat and listened to it, as destructive to the information provided by the [petitioner] relative to his version of the facts. I'm gonna also tell you the [petitioner] himself was in my view a very poor witness, and he testified himself.

So I have given credit to [the jailhouse informant] in terms of structuring this in a way in recognizing his role and function in that, but I've also hung over his head a substantial period of exposure if [the jailhouse informant] chooses to find a course other than the course towards sobriety.

Id. at 16-17.

As best the court can tell, then, at his trial the petitioner called a witness with whom he had been in the Waukesha County Jail. The State called the jailhouse informant to testify that the petitioner and his witness had conferred with each other prior to the trial, to make sure that the witness's story matched the petitioner's. The jailhouse informant testified on cross-examination that while he had hoped that the prosecutor would assist him in getting his own sentence reduced in exchange for this testimony, by the time the trial took place he had been told that he would get no consideration. Four months later, when the jailhouse informant was sentenced, the prosecutor reiterated that the informant had not been offered any consideration in exchange for his testimony, but nonetheless asked the sentencing judge to give the informant some unspecified credit. The sentencing judge concluded that

the informant's testimony had been useful and did give him some credit, although the transcript does not reveal the nature of that credit.

The petitioner appears to believe that even though the jailhouse informant testified at the petitioner's trial that he had been told he would get no consideration for his testimony, and even though the prosecutor told the judge at the informant's sentencing that at the time of the petitioner's trial the informant had been told he'd receive no consideration, that wasn't true. The petitioner appears to believe that all along, the prosecutor and the jailhouse informant knew that at the informant's sentencing, the prosecutor would ask the judge to give the informant consideration for the informant's testimony, but that the informant lied under oath to the jury and the prosecutor lied to the jury and the judge. The petitioner cites no evidence that supports this allegation. He has not identified any evidence that could have been presented at trial to show that the informant, or the prosecutor, was being untruthful when they said that at the time of the trial, the informant had been told he would receive no consideration.

Nor has the petitioner demonstrated that but for the informant's testimony, he would not have been convicted. It appears that the informant was not a witness to what the petitioner did to his girlfriend. The informant's testimony served only to undermine the testimony of one of the petitioner's witnesses, not to undermine the prosecution's case. The petitioner's insistence that there was some sort of "scheme," and that had Attorney Flanagan

20

uncovered it, the petitioner could have filed a successful appeal or post-conviction motion, is pure speculation.

Finally, the petitioner has not demonstrated that a miscarriage of justice will occur if the court dismisses this case due to the procedural defaults. The petitioner has not argued that he is actually innocent of the offenses of conviction. He has identified no new evidence that would make it more likely than not that a reasonable jury would not have found the petitioner guilty beyond a reasonable doubt.

Because the petitioner has procedurally defaulted on all the claims he raises in this federal *habeas* petition, the court will grant the respondent's motion to dismiss the petition.

## III.    Petitioner's Motion for Appointment of Counsel (Dkt. No. 21)

The petitioner asked the court to appoint him an attorney to litigate the petition. Because the court is granting the respondent's motion to dismiss the petition, the motion for appointment of counsel is moot. Even if the court were not dismissing the petition, it likely would not have granted the motion. The petitioner presented his *habeas* claims clearly and thoroughly—in fact, more clearly and thoroughly than many petitioners who file *habeas* petitions before this court—and an incarcerated person does not have a constitutional right to counsel for a collateral attack on his conviction. Cannon v. United States, 326 F. App'x 393, 395 (7th Cir. 2009).

## IV.   Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner procedurally defaulted on his claims.

## V.   Conclusion

The court **GRANTS** the respondent's motion to dismiss the petition. Dkt. No. 22.

The court **DENIES AS MOOT** the petitioner's motion for appointment of counsel. Dkt. No. 21.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 31st day of August, 2021.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

23